**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hunter Mazza, | No. CV-25-03832-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Primelending, et al., | |
| Defendants. | |

Plaintiff Hunter Mazza filed a motion for a temporary restraining order against defendants Primelending, Carrington Mortgage Services, and Does 1-10 while this case was in state court. (Doc. 1-1 at 38.) That motion seeks to prevent a foreclosure sale set for October 23, 2025. Defendant Carrington Mortgage Services ("Carrington") responded in opposition. Mazza's motion is denied.

**I.   Background**

In 2022, Mazza obtained a mortgage loan from Primelending on the property at issue for $364,280. (Doc. 1-1 at 39.) Both parties agree the Deed of Trust was properly executed, under which Mortgage Electronic Registration Systems, Inc. ("MERS") was the nominee for the lender (Primelending) and was the beneficiary of the Deed of Trust. (Doc. 1-1 at 39.)

Mazza began missing monthly payments in May 2024, a pattern which continued to today. (Doc. 4 at 3, 8.) The following month, he received notices from Primelending directing him to resources including free housing counselors and advice. (Doc. 4-5 at 3.)

1 In August 2024, MERS transferred the Deed of Trust to Primelending. (Doc. 4-3 at 2.) In
2 February 2025, Primelending transferred the Deed of Trust to Carrington. (Doc. 4-4 at 2.)
3 In January 2025, Carrington sent Mazza a notice of its intent to foreclose on the property,
4 which included the balance of Mazza's missed payments and multiple free resources for
5 loan and housing options. (Doc. 4-6 at 2.) In April 2025, Carrington named Vylla Solutions,
6 LLC ("Vylla") as trustee under the Deed of Trust; in May, Vylla filed a notice of trustee's
7 sale of the property for public auction, set for August 21, 2025, and delivered this notice
8 and other foreclosure documents to Mazza. (Docs. 4-7, 4-8.) The sale was continued until
9 October 23, 2025. (Doc. 4 at 4.)

At some point, Mazza applied for loan assistance "[t]hrough an advertisement by Defendant that loan modifications are available." (Doc. 1-1 at 40.) On June 20, 2025, he requested foreclosure alternatives and a single point of contact. (Doc. 1-1 at 39.) Following the application(s) for loan assistance, Mazza alleges he was not given meaningful review and was unable to communicate with a specialist assigned to him. (Doc. 1-1 at 40.) Carrington alleges in its response that it sent Mazza a June 27, 2025 notice with instructions on paying the owed balance in order to reinstate the loan and a September 26, 2025 "detailed response" to Mazza's inquiry which explained the amount owed, options to avoid foreclosure, and account status. (Doc. 4 at 3-4.)

Mazza alleges defendants' failure to properly respond violated 12 C.F.R. § 1024.40(b)(1)(i), which requires loan servicers to provide borrowers accurate information about loss mitigation options. (Doc. 1-1 at 9.) Mazza also alleges defendants' failure to provide Mazza a single point of contact violated 12 C.F.R. § 1024.40, which regulates the personnel loan servicers must provide to borrowers. (Doc. 1-1 at 10.) Finally, Mazza alleges Primelending failed to disclose its status as the loan's new beneficiary within 30 days of its changed status as required by 15 U.S.C. § 1641(g).

**II.    Legal Standard**

A court must analyze a request for a temporary restraining order or preliminary injunction under two slightly-different tests. First, a court must evaluate if there is a

likelihood of success on the merits, if there is a likelihood of irreparable harm, whether the balance of equities tips in plaintiff's favor, and whether an injunction would be in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2009). A court must also assess whether "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor" in addition to showing "a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). The threshold to grant these motions is high: "[a] preliminary injunction is an extraordinary remedy never awarded as of right." *Winter*, 555 U.S. at 24.

### III. Analysis

Mazza alleges three causes of action: two under subsections of 12 C.F.R. § 1024.40, arguing these regulations are actionable under 12 U.S.C. § 2605(f), and one under 15 U.S.C. § 1641(g). He has not shown a likelihood of success or that there are serious questions going to the merits on any claim such that he meets the high bar for granting a temporary restraining order.

At present, the first two claims have no likelihood of success because there does not appear to be a private right of action to enforce 12 C.F.R. § 1024.40 provisions, and 12 U.S.C. § 2605(f) does not confer such a right. *See Harris v. Wells Fargo Bank, N.A.*, No. EDCV16645JGBKKX, 2016 WL 11525309, at *3 (C.D. Cal. Aug. 18, 2016) (the Consumer Financial Protection Bureau's own interpretation of 12 C.F.R. § 1024.40 provisions states "there will not be a private right of action to enforce these provisions"); *see also Muathe v. Wells Fargo Bank, NA*, 807 F. App'x 855, 860 (10th Cir. 2020) (recognizing no private right of action); *Cilien v. U.S. Bank Nat'l Ass'n*, 687 F. App'x 789, 792 n.2 (11th Cir. 2017) (same). And regardless, 12 U.S.C. § 2605(f) does not provide for injunctive relief; if Mazza was successful, he would win monetary damages and costs but the foreclosure itself would remain unaffected. *See Tarrolly v. MUFG UnionBank N.A.*, No. CV1502540SJOAJW, 2015 WL 12659909, at *5 (C.D. Cal. May 21, 2015) ("Even if Plaintiffs were successful on their [12 U.S.C. § 2605(f)] claims, an injunction preventing

the foreclosure sale would not be available.").

Mazza's only remaining claim is based on 15 U.S.C. § 1641(g), a provision of the Truth in Lending Act ("TILA"). As relevant here, TILA "requires that any new creditor or assignee of the debt in question notify the borrower, in writing, of the transfer or assignment of the loan." *Vargas v. JP Morgan Chase Bank, N.A.*, 30 F. Supp. 3d 945, 950 (C.D. Cal. 2014). Mazza alleges that following the February 19, 2025 transfer of the Deed of Trust, Primelending failed to disclose its status as the loan's new beneficiary within 30 days, thereby violating TILA. (Doc. 1-1 at 11.) To state a TILA claim, Mazza needed to plead "the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement." 15 U.S.C. § 1641(a). But Mazza has not alleged any facts regarding the disclosure statement at all.

TILA pleading standards aside, Mazza has not shown any likelihood of success on the claim. Factually, Primelending's failure to disclose would be unproblematic since on February 19, 2025, Primelending conveyed the Deed of Trust to Carrington; Primelending did not become the loan's new beneficiary on that date and so had no obligation to disclose any change of status. (Doc. 4-4 at 2.) Accordingly, the facts as pleaded would likely not survive a motion to dismiss and certainly cannot establish a likelihood of success or serious questions going to the merits. And legally, like the claim under 12 U.S.C. § 2605(f), Mazza would not be entitled to injunctive relief to put off the foreclosure sale even if he prevailed on his TILA claim; a plaintiff who successfully proves a § 1641(g) violation may win actual damages sustained as a result of the violation (which Mazza did not plead) or an amount related to any finance charge in connection with the transaction (which Mazza also did not plead). 15 U.S.C. § 1640. He cannot use § 1641(g) to stop the sale.

The "loss of one's home constitutes irreparable harm," which weighs in favor of an injunction. *Perry v. Nat'l Default Servicing Corp.*, No. 10-CV-03167-LHK, 2010 WL 3325623, at *6 (N.D. Cal. Aug. 20, 2010). This potential harm is greater than the cost to defendants of delaying the recouping of costs on the property. (*See* Doc. 4 at 7-8.) But irreparable harm in the absence of strong claims does not meet the high threshold for

emergency injunctive relief.

### IV. Conclusion

Mazza did not plead facts supporting a likely victory on the merits or even that there are serious questions going to the merits. His motion for a temporary restraining order is denied.

Accordingly,

**IT IS ORDERED** the motion for a temporary restraining order (Doc. 1-1 at 38) is **DENIED**.

Dated this 21st day of October, 2025.

*Krissa M. Lanham*
Honorable Krissa M. Lanham
United States District Judge